UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD MCKEE,

                  Plaintiff,

v.                                                Case No:  2:11-cv-579-Ftm-38DNF

DIRECTOR, FLORIDA CIVIL
COMMITMENT CENTER,

                  Defendant.

_____/

## OPINION AND ORDER[1]

This case is before the Court on the Defendant Director Florida Civil Commitment Center's ("Defendant's") Second Motion for Summary Judgment (Doc. 57, filed January 30, 2014); and Plaintiff Donald McKee's ("Plaintiff's") Response in Opposition to Defendant's Second Motion for Summary Judgment (Doc. 59, filed March 5, 2014).  For the reasons discussed herein, the Court concludes that Defendant is entitled to summary judgment on all of Plaintiff's claims.

## I.   Background and Procedural History

Plaintiff initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.  The claims raised in the civil complaint stem from Plaintiff's exposure to environmental tobacco ("ETS") smoke at the Florida Civil Commitment Center ("FCCC")

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

in Arcadia, Florida.  Plaintiff's second amended complaint is currently before this Court (Doc. 20).

### a.    *Plaintiff's Claims*

In his second amended complaint, Plaintiff alleges the following:

Therapeutic Security Technicians ("TSTs") are utilized as security staff by the FCCC to "[observe] resident behavior in the housing unit and [the TSTs] are instructed to contact certified security if interventions are required." (Doc. 20 at 2).  Security officers who are certified by the state are more highly paid than TSTs.  *Id.*  Because some of the TSTs are "overly familiar and friendly with residents at FCCC", many of them are not effective.  *Id.*    Moreover, the FCCC is "chronically short staffed" and at times the TSTs are required to abandon their posts without relief.  *Id.*  During large portions of the day, there are no staff members in the housing units.  *Id.* at 3.

Since April of 2009, FCCC policy has forbidden the use of tobacco products by FCCC staff or its residents (Doc. 20 at 2).  Despite the FCCC's prohibition against the use of tobacco, tobacco products are present and used by residents.  *Id.*  Plaintiff alleges that because all incoming mail is searched and residents are searched after receiving visitors from the community, the only way for tobacco and other contraband to enter the FCCC is through corrupt staff.  *Id.*   Plaintiff further alleges that the FCCC has "a lucrative market for tobacco products in the form of loose leaf tobacco, to be smoked." *Id.*  Plaintiff alleges that he is forced to inhale second hand smoke, and as a result, he "is experiencing effects from this secondhand smoke as if he was a smoker." *Id.* at 3.

Plaintiff informed the director of the FCCC of the "smoking issue" but received no response (Doc. 20 at 3).  Plaintiff also sought help from the FCCC's medical department

concerning health problems caused by breathing second hand smoke, and was told to alert security to the smokers. Plaintiff believes that alerting security would be useless because the offenders would merely deny the allegations and seek to harm the informant. *Id.*

Plaintiff alleges a Fourteenth Amendment due process claim on the ground that he fears for his future health and well-being as a result of his exposure to second-hand smoke (Doc. 20 at 4).  Plaintiff asserts that GEO, the corporation that runs the FCCC, seeks to maximize profits by maintaining only minimal staffing levels which leads to a lack of oversight at the FCCC. *Id.* at 3.  Plaintiff also alleges that corrupt staff members at the FCCC distribute tobacco products to the residents for profit. *Id.*

Plaintiff seeks injunctive relief against Defendant.  Specifically, Plaintiff wants the FCCC to implement a policy requiring the presence of certified security officers in all housing units at all times or, alternatively, Plaintiff asks to be housed alone in a cell in a housing unit of his choice for the duration of his time at the FCCC (Doc. 20 at 4).

### b.    Plaintiff's Motion for Sanctions

On February 6, 2013 Plaintiff filed a motion for sanctions in which he argued that Defendant intentionally destroyed, or allowed to be destroyed, approximately 830 crucial video clips showing the use of tobacco by residents at the FCCC (Doc. 33).  Plaintiff had made three separate demands to Defendant that the FCCC preserve video clips.  The Magistrate Judge concluded that the first thirty-three video clips, those requested in Plaintiff's first two demands, were important evidence and that Defendant's spoliation of

those clips was predicated on bad faith (Doc. 50).[2]  The Court recognized that Plaintiff was disadvantaged by the clips' destruction, but that he could still prove his case by finding witnesses to his exposure to second-hand smoke at the FCCC. *Id.* at 14.  The Court specifically noted:

> While Plaintiff argues that he is unable to locate residents willing to document incidents of smoking because of the fear of retaliation (Doc. 33 at 5), this argument is belied by the fact that Plaintiff has attached to his response in opposition to Defendant's [first] motion for summary judgment two affidavits from FCCC residents regarding the smoking policy at the FCCC (Doc. 43).  Moreover, Plaintiff has not asserted that he has been retaliated against as a result of filing a lawsuit regarding tobacco use at the FCCC. Finally, Plaintiff states that he is forced to breathe air "rife with second hand tobacco smoke" for at least four hours per day (Doc. 41 at 3). If the smoking is as pervasive as Plaintiff alleges, he will be able to find, among the numerous staff and residents at the FCCC, witnesses who will state such.

(Doc. 50 at 14).  As sanctions for the destruction of the video clips, the Court struck Defendant's pending motion for summary judgment and re-opened discovery so that Plaintiff could seek additional evidence in support of his assertion that he was exposed to an unreasonably high level of tobacco smoke.  *Id.* at 17.  Defendant was also directed to provide Plaintiff with information regarding smoking violations at the FCCC. *Id.* at 17-18.  Defendant complied with the order on November 21, 2013, documenting 63 incidents where a resident violated the FCCC's tobacco policy (Doc. 51).

---

[2] Judge Frazier limited his order to the first thirty-three video clips sought by Plaintiff because Plaintiff's third request to the defendant was "so unreasonable, overbroad, and unduly burdensome, that a request for a protective order would have undoubtedly been granted if one had been sought." (Doc. 50 at n. 3).

### c.      Defendant's Motion for Summary Judgment

After the second discovery period closed, Defendant Director filed a second motion for summary judgment on January 30, 2014.  In the motion, Defendant argues that Plaintiff has not put forth evidence establishing either the objective or subjective prong of an environmental tobacco smoke ("ETS") claim (Doc. 57 at 12-14).  In support of his motion for summary judgment, Defendant filed Plaintiff's September 27, 2011 sick call request (Doc. 57-1); Affidavit of Cindy Neads (Doc. 57-2); Affidavit of Tim Budz (Doc. 57-3); an air quality environmental report (Doc. 57-4); Tim Budz' July 23, 2009 Memorandum to FCCC residents (Doc. 57-5); Tim Budz' January 13, 2011 Memorandum to FCCC staff (Doc. 57-6); Affidavit of Donald Sawyer (Doc. 57-8); and Plaintiff's medical records (Doc. 40-2).  In response to an order from this Court, Defendant also filed a list of each occurrence from April 2009 until October 24, 2013 in which a staff member or resident at the FCCC was caught violating the institution's tobacco policy (Doc. 51).

In response to Defendant's motion for summary judgment, Plaintiff filed his own affidavit and an FCCC resident communication form indicating that Plaintiff has refused protective custody (Doc. 60-1).

## II.   Legal Standards

### a.      Constitutional Standards

Plaintiff filed this action as a civil detainee confined at the FCCC pursuant to the State of Florida's Involuntary Commitment of Sexually Violent Predator's Treatment and Care Act. *See* Fla. Stat. §§ 394.910–.913.  As a person who is civilly confined, Plaintiff is in a position analogous to a criminally confined prisoner. *See Pullen v. State*, 802 So.2d 1113, 1119 (Fla. 2001) ("the curtailment of the fundamental right of liberty is implicated in

both criminal proceedings and involuntary civil commitments"). Nevertheless, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982)).  Thus, while civilly committed residents at the FCCC are "totally confined" and subject to internal regulations much like those established by the Florida Department of Corrections,[3] they are due a higher standard of care than those who are criminally committed. *Id.*  Indeed, the Eleventh Circuit Court of Appeals has held that persons subjected to involuntary civil commitment "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.*

A criminally confined prisoner, has an Eighth Amendment right to be free from cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 318–19 (1986).  As the rights of the involuntarily civilly committed are "at least as extensive as the rights of the criminally institutionalized," actions which would violate the Eighth Amendment rights of a prisoner, would likewise constitute a violation of the due process rights of an individual who was been involuntarily civilly committed. *See Dolihite*, 74 F.3d at 1041.  Indeed, the Eleventh Circuit has recognized that "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." *Id.*; *see also Lavendar v. Kearney*, 206 F. App'x 860, 863 (11th Cir. 2006).  Therefore, while

---

[3] *See* Fla. Stat. § 394.912(11).

recognizing that Plaintiff is not a prisoner, this Court will examine relevant Eighth Amendment case law in its consideration of this case.

### b.    Summary Judgment Standard

Summary judgment is appropriate if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322–324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, (1986).

### c.      Standards for claims based upon exposure to environmental tobacco smoke

In order to prevail on an Eighth Amendment claim based upon a prisoner's exposure to environmental tobacco smoke, the plaintiff must establish one of two distinct types of claims – a future-injury claim or a present-injury claim. *See Helling v. McKinney, 509 U.S. 25 (1993).* In a present-injury claim, the plaintiff must establish that he suffers a serious medical need for a smoke-free environment and that prison officials displayed deliberate indifference to that need, resulting in an actual injury to the plaintiff's health. A claim for injunctive relief in a future-injury case does not require a plaintiff to show any presently existing health problems. The focus in an action for injunctive relief under *Helling* is on whether the level of ETS to which a prisoner has been involuntarily exposed "is such that his future health is unreasonable endangered," and an assessment of whether society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. 35, 36 (emphasis in original).

Plaintiff asserts that his complaint is limited to potential future harm caused by his exposure to environmental tobacco smoke (Doc. 59-1 at 2). To prevail on such a claim, Plaintiff must prove both the objective and subjective elements of an Eighth Amendment violation.

### III.   <u>Analysis</u>

#### a.   *Objective Element*

Under the 'objective component' prong of the *Helling* test, a prisoner "must show that he himself is being exposed to unreasonably high levels of ETS." *Helling*, 509 U.S. at 35. The objective component further considers "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by ETS." *Id.* at 36.  The Court must also "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.*

Defendant asserts that Plaintiff cannot satisfy the objective prong of *Helling* because he has not shown that he has been exposed to unreasonably high levels of environmental tobacco smoke (Doc. 57 at 13).  In fact, argues Defendant, Plaintiff has failed "to present any objective evidence as to the levels of ETS to which he himself was exposed." *Id.*  Defendant further argues that Plaintiff has not established that he will have health issues in the future as a result of second-hand tobacco smoke. *Id.*

In support of his position, Defendant has attached an April 27, 2011 air quality report from T. Baldwin Environmental Services and Const. Inc. which indicates that ten air samples were taken from the FCCC on March 31, 2011 and that "[t]he quality of air [at the FCCC] is above average and environmentally safe." (Doc. 57-4 at 1).  Defendant also references Plaintiff's medical records and has attached a statement from Cindy Neads, a nurse at the FCCC (Doc. 57-2 at 1-2).  Neads attests that she has reviewed Plaintiff's medical records from early 2009 until June 21, 2013 and that the only record in which Plaintiff complained of second hand smoke was a single sick call request from September

27, 2011, four days prior to filing the instant lawsuit. *Id.* at 2.  Neads attests that Plaintiff "did not complain of lung issues or any other issues that could be related to second hand smoke from 2009 through the present other than the previously discussed sick call request from September 27, 2011." *Id.* at 2.  Neads attests that Plaintiff denied having headaches, lung conditions, bronchitis or emphysema on February 25, 2011 and February 27, 2012 (Doc. 57-2 at 2).

Despite this Court's admonition in the October 14, 2013 order (Doc. 50) that "Plaintiff will need to find witnesses to his exposure to second-hand smoke at the FCCC[,]" and despite having two separate discovery periods to gather such evidence, Plaintiff does not attach a single statement from any staff member or FCCC resident or any other evidence documenting Plaintiff's exposure to second hand smoke.[4]  Likewise, Plaintiff has offered no admissible evidence to rebut Defendant's scientific finding that the air

---

[4] Plaintiff alleges that 839 destroyed video clips would have shown numerous incidents of residents and employees smoking but that "[t]he videos sought were destroyed by Defendant, ultimately resulting in the court[']s imposition of sanctions." (Doc. 59-1 at 3). Plaintiff's implication that the destruction of the 839 clips resulted in the imposition of sanctions against Defendant is a misstatement of the Court's prior order.  Only 33 of those clips were at issue in the spoliation order.   Even so, these 33 clips no longer exist, and it was clearly explained to Plaintiff that he had a responsibility to obtain admissible evidence to defeat Defendant's motion for summary judgment. Plaintiff was provided with explicit instructions from the Court regarding the evidence he needed to support his claim (Doc. 50 at 14). Plaintiff cannot now rely solely on his allegations that the clips "would have" supported his claims.

Plaintiff asserts that his fear of being threatened with retaliation "informed [his] decision to forgo affidavits and testimony from fellow residents." (Doc. 59-1 at 3).  Even if Plaintiff was reluctant to seek affidavits from FCCC staff or residents, Plaintiff does not allege that he attempted to engage in any available discovery method such as interrogatories or requests for admissions, or that he asked any resident or staff member to make a statement regarding Plaintiff's exposure to ETS or to verify Plaintiff's statements regarding the general staffing levels at the FCCC or the number of "anonymous" reports that were made regarding incidents of smoking.  In other words, Plaintiff engaged in absolutely no discovery to support his claim that he is exposed to unreasonable levels of ETS.

quality at the FCCC was "above average and environmentally safe." (Doc. 57-4 at 1).

Plaintiff merely asserts in his own affidavit that he was exposed to too much second-hand

smoke (Doc. 59-1).  Plaintiff claims to experience the heaviest exposure to ETS between

noon and 1 p.m. when he is locked in his housing unit, and the other residents smoke

tobacco in the living and bathroom areas, because "[a]t this time TST's are called away

to perform other duties and/or take breaks." (Doc. 59-2 at 4).  According to Plaintiff, "[a]ir

in the housing unit then noticeably contains ETS in amounts sufficient to potentially cause

future harm to my health." (Doc. 59-1 at 4).

The Eleventh Circuit has consistently held that a party's conclusory allegations,

without more, are insufficient to enable the non-moving party to withstand summary

judgment. *Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997); *Earley v. Champion Int'l

Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (conclusory, self-serving, or uncorroborated

allegations in affidavit could not create issue of fact sufficient to defeat well supported

summary judgment); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)

("This court has consistently held that conclusory allegations without specific supporting

facts have no probative value.") (citation omitted).  Thus, the Court finds that Plaintiff's

limited anecdotal evidence regarding his lunch-time exposure level is insufficient to

overcome Defendant's objective evidence that Plaintiff was not exposed to excessive

levels of ETS.

Recognizing that he has presented no evidence of his own ETS exposure at

FCCC, Plaintiff directs this Court to a June 2006 Surgeon General's report which

concluded that "there is no safe level of exposure to ETS." (Doc. 59-1 at 2).  Plaintiff

asserts that because there is "ample evidence" of smoking at the FCCC, he need not

make the individualized showing required by *Helling. Id.* Presumably then, Plaintiff contends that he only need show that he has been exposed to some second-hand smoke, no matter how limited, to satisfy *Helling's* objective prong, and because there is no dispute that there is some level of ETS at the FCCC, he has satisfied this requirement (Doc. 59-1 at 4). This argument misses the mark.

*Helling* requires that a plaintiff's exposure to ETS must result in the kind of risk to health that "violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." 509 U.S. at 36 (emphasis in original). The fact that Plaintiff subjectively fears that the FCCC's imperfect enforcement of its no-smoking policy has exposed him to ETS in amounts sufficient to pose a threat to his future health does not demonstrate that the exposure level presents a risk of harm so serious that it would violate "contemporary standards of decency." Moreover, a consideration of the referenced 2006 Surgeon General's report does not change this Court's conclusion.[5] The findings in the report – that ETS exposure results in greater observed health maladies in a general population – does not address what Plaintiff experienced. The inquiry is not whether ETS is generally harmful, or whether it has been shown to cause increased risks in populations exposed to it; the inquiry is whether *Plaintiff's* particular exposure to ETS caused *Plaintiff* to suffer a greater risk of harm. *Helling*, 509 U.S. at 35 ("With respect to the objective factor, [a plaintiff] must show that *he himself* is being exposed to unreasonably high levels of ETS.") (emphasis added). A general study is not sufficient to make the individualized showing of risk *Helling* requires. To decide otherwise would be to conclude that the constitution

---

[5] The 2006 Surgeon General's report, *The Health Consequences of Involuntary Exposure to Tobacco Smoke: A Report of the Surgeon General*, may be found at: http://www.ncbi.nlm.nih.gov/books/NBK44328/#rpt-smokeexp.ch1.s5

requires an absolutely smoke free prison environment and render the first prong of the *Helling* test meaningless because once an inmate showed that he was exposed to any secondhand smoke — no matter how limited, fleeting, or minute —  his burden of proof on the first *Helling* prong would be satisfied. *See King v. Henry*, Case No. 5:09-cv-365/MCR/EMT, 2011 WL 5877070 (N.D. Fla. Sept. 19, 2011) (recognizing that a prisoner cannot rely on the 2006 Surgeon General's report or a WHO report to satisfy *Helling*'s objective prong because such reports "underscore general health risks associated with ETS; however, this evidence does not objectively establish [the plaintiff's] individual and particular level of exposure or attendant risk."); *Giddens v. Roberts*, Case No. 1:05-CV-112, 2007 WL 891516, at *3 (M.D. Ga. March 21, 2007) (rejecting Plaintiff's reliance on the Surgeon General's report to prove the objective prong of the *Helling* test because "in order to prevail upon a claim for exposure to ETS, a plaintiff must do more than merely set out that the exposure is adversely affecting his health.  He must present *evidence* showing that he is being exposed to ETS at a level that creates an unreasonable risk of serious damage to his future health.") (emphasis in original); *Hunt v. Cassese*, Case No. 5:10-CT-3132-D, 2011 WL 6130796, at *3 (E.D.N.C. Dec. 8, 2011) (rejecting Plaintiff's reliance on the 2006 Surgeon General's report to prove the objective prong of the *Helling* test because the plaintiff failed to show any connection between the hypothetical risks of ETS exposure and the plaintiff's exposure to ETS); *Durham v. Hood*, Case No. 05-cv-01282-MSK-KLM, 2010 WL 918066, at *5 (D. Colo. March 11, 2010) ("General studies, medical journals, and statistics are not sufficient to make the individualized showing of risk that is required, and without such an individualized showing, [the prisoner's] claim fails. To conclude otherwise would be to render ETS cases strict liability; once an inmate

showed that he was exposed to secondhand smoke, his burden of proof is satisfied because exposure generally means increased health risks."); *but compare Hicks v. Corrections Corp. of America*, 2009 WL 2969768, at *7 (W.D. La. Sept. 11, 2009) (finding that the Surgeon General's report "established conclusively" that exposure to second hand smoke is unhealthy and dangerous and that plaintiff's evidence that he was exposed to second hand smoke almost 24 hours a day every day satisfied the plaintiff's burden of proof on the objective element); *Perkins v. Terrell*, Case No. 08-CV-1906, 2010 WL 5488234, at *8 (W.D. La. Dec. 6, 2010) (relying on *Hicks* to conclude that "almost any unwanted exposure to ETS would be enough to defeat summary judgment as to the objective element.").

Plaintiff's failure to demonstrate that <u>he</u> has suffered an increased risk of future harm from exposure to ETS in amounts that violate contemporary standards of decency prevents him from satisfying the objective prong of the *Helling* test. *See Helling*, 509 U.S. at 36 (recognizing that it is the plaintiff's burden to show that "the risk of which he complains is not one that today's society chooses to tolerate."); *In re Royal Caribbean Cruises Ltd.,* 403 F.Supp.2d 1168, 1173 (S.D. Fla. 2005) (granting summary judgment where nonmoving party "failed to put forth any evidence" to refute affidavit submitted by moving party); *Gantt v. Whirlpool Fin. Nat'l. Bank*, Case No. 99-470-AH-M, 2000 WL 1375298 (S.D. Ala. Aug. 22, 2000) (summary judgment appropriate because plaintiff failed to come forward with evidence to refute defendant's affidavit).

### b. Subjective Element

Even if this Court were to conclude that Plaintiff has satisfied the objective prong of the *Helling* test, which he cannot for the reasons outlined above, Plaintiff would need

to come forward with sufficient evidence to show that Defendant acted with deliberate indifference to Plaintiff's plight. *Helling*, 509 U.S. at 35. To establish that a prison official acted with deliberate indifference, the plaintiff must show that the prison official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). In regard to ETS, "the adoption of the [no] smoking policy . . . will bear heavily on the inquiry into deliberate indifference." *Helling*, 509 U.S. at 36.

Defendant asserts that Plaintiff cannot make the necessary subjective showing because there is no evidence that he was aware that Plaintiff could suffer a medical condition in the future related to second hand smoke (Doc. 57 at 14). Defendant also argues that the FCCC implemented a no-smoking policy in 2009 and that the "FCCC worked diligently to enforce the non-smoking policy at FCCC." (Doc. 57 at 15). In support, Defendant reasserts that Plaintiff repeatedly denied to medical staff that he suffers from headaches, lung condition, bronchitis or emphysema – all conditions that would have been caused by, or aggravated by ETS and which could have alerted Defendant to a potential future health problem (Doc. 57-1 at 2). Defendant attaches the affidavits of Tim Budz, prior director of the FCCC, and Donald Sawyer, present director of the FCCC (Doc. 57-3; Doc. 57-8). In the affidavits, both directors attest that the FCCC is a non-smoking facility and that any resident or staff member caught smoking would be disciplined, although neither could remember when or if a staff member had been caught smoking at the FCCC. *Id.* Both assert that the resident handbook states that the FCCC is a non-smoking facility and that residents are expected to follow the handbook. *Id.* Both attest that residents can anonymously report smoking at the FCCC and that such reports are

taken seriously. *Id.* Defendant also directs the Court to a memorandum sent to FCCC residents on July 23, 2009 which stated that "[a]s clearly communicated in the resident council meeting on 6/17/09, FCCC is and will remain a smoke and tobacco free facility." (Doc. 57-5).  Finally, Defendant attaches a January 13, 2011 memorandum to the FCCC staff in which Tim Budz "applauds" the staff's "effort at maintaining a healthy and smoke free environment at FCCC!" (Doc. 57-6).   The memorandum directs staff to a video outlining the benefits of working in a smoke-free environment, offered employees assistance with smoking cessation, and forbad smoking in the driveway of the FCCC (Doc. 57-6).  Defendant has submitted a list of sixty-three incidents between June 9, 2009 and August 5, 2013 in which a resident was caught smoking (Doc. 51-1).

In his own affidavit, Plaintiff argues that because of the large number of residents at the FCCC, the small number of documented smoking incidents listed by Defendant evidences a lack of a good faith effort to prohibit smoking at the FCCC (Doc. 59-1 at 7). Again, Plaintiff offers no evidence, other than his own unsubstantiated allegations and suspicions, to rebut Defendant's assertion that the FCCC actively attempts to enforce its no-smoking policy or that the small number of reported smoking incidents could be the result of an overall small number of smoking incidents.  Rather, Plaintiff relies on *Cassady v. Donald*, 447 F. App'x 28 (11th Cir. 2011) to support his contention that his affidavit evidence alone can establish that prison officials were deliberately indifferent to an inmate's ETS exposure and defeat a motion for summary judgment.  Plaintiff's reliance on *Cassady* is misplaced.  In that case, Cassady was forced to share a cell with a chronic smoker who smoked four packs of cigarettes per day. 447 F. App'x at 30.  The Eleventh Circuit noted that "numerous" inmates had submitted affidavits stating that they routinely

smoked indoors without punishment; that the prison officials did not allow outdoor smoking breaks; that indoor smoking was a daily occurrence but they had never witnessed a prison official discipline an inmate for smoking indoors; and that many inmates frequently violated the policy against indoor smoking with impunity. *Id.* at 31.   In addition, Cassady had written letters, filed grievances, and spoken with prison officials regarding the unreasonable levels of second-hand smoke.   Further, Cassady had submitted evidence that he suffered from asthma or reactive airway disease that caused him to be particularly susceptible to second-hand smoke. *Id.*   The Eleventh Circuit concluded that given the amount of evidence submitted by Cassady, a material issue of fact existed as to whether prisoner officials had violated his constitutional rights, and the district court had erred by granting summary judgment.   The Court contrasted Cassady's evidence with that offered by the plaintiff in *Kelley v. Hicks*, 400 F.3d 1282 (11th Cir. 2005), in which "the only evidence provided was 'personal observations of smoke inside the prison' and his personal opinion that the ventilation in the prison was inadequate." *Id.* The court specifically noted that, unlike the Plaintiff in *Kelley* (where the district court's dismissal at summary judgment was affirmed), Cassady had "submitted multiple affidavits from other inmates to corroborate his allegations[.]" *Id.* at 32.

Unlike Cassady, Plaintiff has not submitted affidavits or other admissible evidence in opposition to Defendant's motion for summary judgment in which an FCCC resident or staff member attests that the FCCC's smoking ban is routinely ignored.   Nor has Plaintiff submitted evidence that he suffers from any ailment that makes him particularly susceptible to the effects of ETS.   To the contrary, the evidence submitted by Defendant indicates that Plaintiff did not suffer from ETS related health issues and with the exception

of one sick call request, made only four days prior to filing the instant complaint, Plaintiff has submitted no evidence, other than his own self-serving affidavit, that he complained to medical staff about his exposure to second hand smoke or his fears that such exposure could cause future harm.

Plaintiff disputes Defendant Budz' attestation that residents may anonymously report smoking at the FCCC and that these anonymous complaints are taken seriously, by stating that he submitted a single written complaint to Budz informing him of the smoking issue which was not responded to.   Plaintiff does not provide a copy of the complaint, indicate the date it was sent, describe its contents, or assert that the single complaint was sufficient to show that Budz had "subjective knowledge of a risk of serious harm to Plaintiff's health."[6] Nor does it appear that Plaintiff served interrogatories or asked Defendant to provide him with a list of the anonymous reports filed on this issue.

Plaintiff also asserts that when he complained to the medical staff about his ETS exposure, the medical staff did not investigate.   Instead, Plaintiff was advised to let security know who violated the FCCC's no-smoking policy (Doc. 59-1 at 6; Doc. 57-1). Plaintiff does not assert that he actually alerted security as to who was violating the smoking policy as was instructed by the medical staff; rather Plaintiff admits that he has not done so because "[t]his is a strategy that is worse than useless as offending residents

---

[6] To the extent Plaintiff challenges Budz' statement that anonymous complaints were investigated by asserting that he (Plaintiff) was not contacted regarding his own anonymous complaint, it is unclear to the Court how Defendant was expected to contact the writer of an anonymous complaint.  Given the alleged pervasiveness of ETS at the FCCC, Plaintiff does not explain why he did not submit numerous anonymous complaints to the administration prior to filing this lawsuit.  To the extent that Plaintiff did not utilize the anonymous reporting procedure described in Budz' and Sawyer's affidavits, it is unclear how Defendant was expected to know of, and respond to, a serious risk cause by any resident's exposure to ETS if he is not informed of such.

would simply deny the allegation, and look to harm the person who informed on them." (Doc. 20 at 3).   Nor has Plaintiff provided any evidence that Defendant was aware of this single medical visit in which Plaintiff complained of the effects of ETS.

In the instant case, all Plaintiff has done is list personal observations of residents smoking inside the FCCC facility and speculate that smoking is allowed because of GEO Corporation's reluctance to hire sufficient security guards.   The scant evidence and allegations offered by Plaintiff cannot support a conclusion that Defendant was subjectively aware of and ignored Plaintiff's serious medical needs and does not overcome Defendant's evidence showing that the FCCC implemented a non-smoking policy which it attempted to enforce.   As noted, the Supreme Court has concluded that a facility's adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." *Helling*, 509 U.S. at 36.   At most, Plaintiff has established that Defendant was negligent in enforcing the FCCC's non-smoking policy.   Mere negligence, however, is insufficient to establish deliberate indifference. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *see also Kelley v. Hicks*, 400 F.3d 1282 (11th Cir. 2005) (although the plaintiff had established that some smoking occurred inside the prison in violation of the prison's smoking policy, at most, this established that prison officials were negligent in their enforcement of the smoking policy).

Defendant has met his burden of showing that Plaintiff cannot satisfy the required elements of his claim, and Plaintiff has failed to show a material issue of fact that precludes summary judgment.   Defendant is entitled to judgment as a matter of law, and his motion for summary judgment is due to be granted.

**IV.**     **Conclusion**

Plaintiff has failed to show that there is a genuine issue of material fact regarding whether Defendant was deliberately indifferent to Plaintiff's future health as a result of exposure to unreasonable levels of environmental tobacco smoke at the FCCC.

Accordingly, it is hereby **ORDERED:**

1.     Defendant Director, Florida Civil Commitment Center's Second Motion for Summary Judgment (Doc. 57) is **GRANTED**.

2.     With no remaining defendants or claims, the **Clerk of Court** is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 19, 2014

*Sheri Polster Chappell*

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:  OrlP-4 6/19/14
Copies to:  Donald McKee
Counsel of record